UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PETER J. MAGER,

      Plaintiff,

v.                                                             Case No. 2:16-cv-145
                                                               HON. GORDON J. QUIST

WISCONSIN CENTRAL LTD.,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Peter J. Mager filed this action against Defendant Wisconsin Central Ltd., alleging violations of the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq. Before the undersigned is Defendant's motion to dismiss for failing to comply with a discovery order pursuant to Fed. R. Civ. P. 37(b)(2)(A)(V). (ECF No. 34.) The motion is premised on the conduct of Plaintiff and his attorney at the independent medical examination ("IME"). In his untimely response, Plaintiff's attorney reveals that he secretly recorded the entire IME from a cell phone in his pocket. On November 28, 2017, the undersigned held a hearing on Defendant's motion. The same day, this case was scheduled for an early settlement conference before the undersigned. However, the early settlement conference was adjourned because Plaintiff failed to submit a confidential settlement letter as required by the Case Management Order. Because of the flagrant and repeated misconduct exhibited by Plaintiff and his attorney, the undersigned recommends that Defendant's motion be granted and this case be dismissed with prejudice.

The Court first became aware of the IME on August 21, 2017, when Defendant filed an "Emergency Motion to Dispense with ADR, to Compel IME, and to Compel Cooperation."

(ECF No. 19.) On September 27, 2017, the undersigned held a hearing on Defendant's motion. At the hearing, the parties reached an agreement, which included that Defendant would reimburse the mileage fee for Plaintiff to travel to the IME in Appleton, Wisconsin. Following the hearing, the undersigned issued an order that stated, "Defendant's motion has been resolved by agreement of counsel." (ECF No. 29.) The parties subsequently scheduled the IME for October 20, 2017 at 10:30 a.m.

On October 12, 2017, defense counsel contacted chambers because Plaintiff was refusing to complete a medical patient questionnaire that was requested by the IME physician. Before holding a status conference, the undersigned had each party submit a proposed order that would resolve the issue. Defendant's proposed order stated that Plaintiff must either fill out the medical questionnaire or arrive at the IME an hour early to provide the physician's assistant with the necessary background information. Plaintiff's proposed order stated that Plaintiff is not required to fill out to the medical questionnaire or submit to any interview. During the telephone conference, the undersigned heard argument from both parties and determined that background information was necessary for the IME.[1] The undersigned subsequently issued an order that stated:

> Plaintiff Peter Mager will appear at the IME on October 20, 2017 at 10:00 a.m. C.S.T, for an interview by a physician assistant and for Dr. Revord to conduct an IME. The interview and exam shall not exceed three (3) hours.

(ECF No. 32.)

On October 20, 2017, Plaintiff traveled from the Upper Peninsula of Michigan to Appleton, Wisconsin in order to attend the IME. Despite never informing opposing counsel or the

---

[1] Prior to the completion of the telephone conference, the call was disconnected because defense counsel was on an airplane and her phone was apparently shut off. Shortly thereafter, the undersigned's case manager contacted the parties to ascertain the total length needed for both the interview and the examination. The parties exchanged several emails and, in one such email, Plaintiff's counsel stated: "[Plaintiff] is not able to arrive at the doctor's office until the previously agreed-upon time of 10:30 regardless of Judge Greeley's Order."

Court, Plaintiff's counsel, who is from Chicago, Illinois, also showed up at the IME. Plaintiff and his attorney also decided to secretly record the IME from a cell phone located in the attorney's pocket. The transcript from the IME reveals that Plaintiff and his attorney were far from cordial and created an adversarial situation out of what was supposed to be an independent examination. Instead of answering simple questions about his medications, symptoms, or medical history, Plaintiff and his attorney gave the physician a copy of his deposition and said that the answers were in his deposition. Plaintiff even refused to provide an identification card.

After speaking with the physician and reviewing his report, Defendant filed a motion to dismiss for violating the IME Order. In its motion, Defendant sought dismissal based on the following conduct: (1) Plaintiff's counsel attended the IME without providing opposing counsel any notice; (2) Plaintiff refused to present an identification card at the examination; and (3) Plaintiff refused to answer questions during the background interview. The undersigned subsequently issued a notice of hearing on the motion and directed Plaintiff to respond by November 14, 2017. (ECF No. 35.) On November 15, 2017, Plaintiff filed his response, in which he revealed that his attorney secretly recorded the IME. Plaintiff and his attorney believe that this conduct was legal in Wisconsin and state that they recorded the IME because they were concerned that it would become a "de facto" deposition.

The undersigned held a hearing on Defendant's motion on November 28, 2017, which was the same day that this case was previously scheduled for an early settlement conference before the undersigned. In preparation of the settlement conference, the Case Management Order required that,

> [T]hree business days before the conference, each party or their attorney shall submit to the magistrate judge conducting the conference a confidential letter concerning settlement . . . .

(ECF No. 31, PageID.145.)  Although Defendant submitted a confidential settlement letter, Plaintiff failed to do so.  Thus, the undersigned adjourned the early settlement conference.[2]

Fed. R. Civ. P. 37(b)(2)(A) provides that a court may issue "any just orders" when a party fails to comply with a discovery order, such as a Fed. R. Civ. P. 35 IME order.  Similarly, Fed. R. Civ. P. 16(f)(1) permits a court to, on its own motion, issue "any just orders" when a party "fails to obey a scheduling or other pretrial order."  An order under either one of these rules may "dismiss[] the action or proceeding in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v); Fed. R. Civ. P. 16(f)(1)(C).

In addition, Fed. R. Civ. P. 41(b) provides that the court may dismiss a case for failing to comply with the Federal Rules of Civil Procedure or a court order.  "Although Rule 41(b) does not expressly provide for a *sua sponte* dismissal (the rule actually provides for dismissal on defendant's motion), it is well-settled that the district court can enter a *sua sponte* order of dismissal under Rule 41(b)."  *Rogers v. City of Warren*, 302 F. App'x 371, 375 n.4 (6th Cir. 2008) (citing *Link v. Wabash Railroad Company*, 370 U.S. 626, 630 (1962)).  Finally, federal courts possess the inherent power to dismiss an action in order "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Link,* 370 U.S. at 630-31; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Reid v. Prentice-Hall, Inc.*, 261 F.2d 700, 701 (6th Cir. 1958) ("The court has inherent power to punish abuse of its process by dismissal of an action in the interest of orderly administration of justice.").

"The use of dismissal as a sanction for failing to comply with discovery has been upheld because it accomplishes the dual purpose of punishing the offending party and deterring similar litigants from such misconduct in the future."  *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th

---

[2] At the conclusion of the hearing, the undersigned stayed the case and held it in abeyance while the undersigned considered whether to refer Plaintiff's counsel to a three-judge disciplinary panel.

Cir. 1995) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). When determining whether to dismiss an action as a sanction for failing to comply with a discovery order, the Sixth Circuit directs the district courts to consider the following four factors:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault;
>
> (2) "whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery";
>
> (3) "whether the dismissed party was warned that failure to cooperate could lead to dismissal"; and
>
> (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered."

*Harmon v. CSX Transp., Inc.,* 110 F.3d 364, 366 (6th Cir. 1997) (quoting *Regional Refuse Sys. v. Inland Reclamation Co.,* 842 F.2d 150, 154 (6th Cir. 1988)). These factors are "largely the same" regardless of whether the court is evaluating a dismissal under Rule 37(b), Rule 41(b), or its inherent powers. *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994). "Although typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). "Contumacious conduct refers to behavior that is 'perverse in resisting authority and stubbornly disobedient.'" *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013) (quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008)). "The plaintiff's 'conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings.'" *Id.* (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)).

After considering the factors and applying them to the facts in this case, the undersigned recommends that the Court dismiss this case with prejudice. First, Plaintiff and his

attorney acted in bad faith and willfully violated the discovery order. The order required Plaintiff to submit to an interview. This order was the result of a telephone conference in which Plaintiff's counsel discussed his concerns with allowing an interview. Yet, Plaintiff and his attorney refused to answer several questions during the interview. They refused to provide an identification card and told the physician and his staff to find the information in his deposition transcript.

In addition, although Plaintiff's counsel attending and secretly recording the IME did not expressly violate the court order, the undersigned notes that this conduct shows bad faith and a lack of respect to the integrity of the legal profession. It is well-established that federal courts generally do not allow a third-party to be present during an IME or to have the IME recorded unless the party has established a special need or good cause. *See, e.g.*, *Spencer v. Huron County*, 2016 WL 4578102, at *3 (E.D. Mich. Sept. 2, 2016) ("Unless the opposing party demonstrates a special need or good cause, most federal courts have not permitted either a recording or an observer of an examination."); *Stefan v. Trinity Trucking, LLC*, 275 F.R.D. 248, 250 (N.D. Ohio 2011) ("Federal courts have determined that third parties—whether human or electronic—cannot sit in on physical and mental examinations under Federal Civil Rule 35 unless special circumstances require it."); *Heffelfinger v. Connolly*, 2008 WL 4417177, at *1 (N.D. Ohio Sept. 27, 2008) ("Other courts have generally overruled requests to have attorneys or third parties attend IMEs or, alternatively, to permit such examinations to be recorded."); *Lahar v. Oakland Cty.*, 2006 WL 2269340, at *8 (E.D. Mich. Aug. 8, 2006) ("[T]he majority of federal courts decline to allow either recording or an observer, absent a showing of a special need or good reason."). As these cases clearly establish, the issue of third-party presence and/or recording the IME is often litigated by the parties. Moreover, the burden is on the Plaintiff to show why a third-party should be present or why the IME should be recorded.

Plaintiff's counsel states that he attended and secretly recorded the IME because he was concerned that it would become a "de facto" deposition. (ECF No. 36, PageID.189.) To support this proposition, Plaintiff cites to "Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice & Procedure: Section 2236*, at 496." The Title of Section 2236 is "Persons Present at Examination." Although the treatise acknowledges that some state courts permit counsel to attend an examination, the treatise states:

> The federal courts generally do not follow state courts that allow counsel to attend examinations. One magistrate judge noted that the federal courts "take a diametrically opposite view to the problems [from the courts of that state] and generally prohibit plaintiff's attorney from being present." Even where a state statute creates a right of counsel to attend in state court, federal judges refuse it. Thus, the norm in federal court is that counsel will not be allowed to attend unless good cause is presented to justify that.
>
> The danger against which the presence of the attorney is intended to protect can be minimized in other ways, particularly by excluding from evidence any statements made by the party to the doctor relating to nonmedical matters. Courts have in mind the fact that there are other protections against abusive behavior by the examiner. The attorney for the examined party can debrief the examined party about what happened and conduct discovery. If there was some impropriety in the conduct of the examination, this can be brought to the attention of the court, and it can exclude the resulting evidence.

8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2236 (3d ed.). Nevertheless, Plaintiff never notified opposing counsel or the Court that he was planning to attend the IME. Moreover, it was reasonable for defense counsel to believe that Plaintiff's counsel would not attend the IME because he lived several hours away and never sought a mileage fee when the parties were discussing Plaintiff receiving a mileage fee for his travel.

In addition, the undersigned is troubled by Plaintiff and his attorney's decision to secretly record the IME. As discussed above, federal courts generally do not allow an IME to be

recorded. Here, Plaintiff and his attorney not only recorded the IME, but did so in secret via a hidden cell phone. After Defendant filed a motion to dismiss because Plaintiff failed to answer some of the background questions at the IME, Plaintiff attempted to use the transcript of the IME to impeach some of the physician's statements. This type of conduct is arguably a violation of Michigan Rules of Professional Conduct, which applies to all attorneys practicing before this Court. *See* W.D. Mich. LCivR 83.1(j). Specifically, Michigan Rules of Professional Conduct 8.4(b) provides: "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer." *See also* Mich. Bar Op. No. RI-309 (May 12, 1998) ("Whether a lawyer may ethically record a conversation without the consent or prior knowledge of the parties involved is situation specific, not unethical *per se*, and must be determined on a case by case basis.").

As to the second factor, the undersigned finds that Defendant was prejudiced by Plaintiff and his attorney's conduct. Plaintiff argues that the failure to answer questions at the IME did not alter the IME physician's expert report. As Plaintiff correctly points out, the IME physician already had access to many of Plaintiff's medical records. However, the IME physician's report states: "The patient handed me a deposition dated June 23, 2017 which I reviewed, but unfortunately this did not contain the answers to the questions I was asking him." (ECF No. 34-2, PageID.163.) Plaintiff also argues that the IME physician said during the IME that he could continue without Plaintiff answering the answers. This argument mischaracterizes the situation—as established by the physician's affidavit, he "did not press plaintiff because [he] believed it was not [his] place to insist that [Plaintiff] answer my question." (ECF No. 34-4, PageID.176.) The

conduct of Plaintiff and his attorney at the IME prevented Defendant from receiving an expert report with all of the medical information that the physician was seeking.

In addition, Defendant was prejudiced by Plaintiff's failure to submit a confidential settlement letter. The failure to submit the settlement letter caused the undersigned to adjourn the settlement conference on November 28, 2017. Defense counsel traveled from Detroit to attend the settlement conference in person.

As to the third factor, Plaintiff was never expressly warned by the undersigned that his failure to cooperate would lead to dismissal. But, as noted above, none of the factors are outcome determinative. *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). Moreover, the undersigned notes that after Defendant filed a motion to dismiss based on the conduct at the IME, Plaintiff was certainly aware that dismissal was a possibility. Despite having this notice, Plaintiff still filed his response late and failed to submit a confidential settlement letter as required by the Case Management Order.

As to the fourth factor, the undersigned has considered lesser sanctions, such as imposing costs for the IME, striking Plaintiff's own expert witnesses, and/or striking Plaintiff's claim for permanent disability. None of these sanctions would reflect the seriousness of the conduct in this case. Due to the repeated misconduct and the particularly egregious act of secretly recording the IME, the undersigned finds that dismissal with prejudice is the appropriate sanction in this case.

Finally, in *Link v. Wabash Railroad Company*, 370 U.S. 626, 633-34 (1962), the Supreme Court acknowledged that a party must bear some responsibility for the actions of his attorney. However, the Sixth Circuit "has expressed an extreme reluctance to uphold the dismissal of a case merely to discipline a party's attorney." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586,

590 (6th Cir. 2001).  Here, Plaintiff's attorney is not solely responsible for violating the court orders.  Plaintiff's counsel is likely responsible for filing the late response and failing to submit a confidential settlement letter as required by the Case Management Order.  However, during the hearing, Plaintiff's attorney informed the undersigned that he never instructed his client to not answer questions at the IME or to hand the physician a copy of his deposition.  Thus, Plaintiff is responsible for some of the conduct and the undersigned's recommendation to dismiss this case is not merely to discipline Plaintiff's attorney.

Accordingly, pursuant to the Federal Rules of Civil Procedure and the Court's inherent powers, the undersigned recommends that the Court grant Defendant's motion and this case be dismissed with prejudice.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  December 28, 2017

                                      /s/ Timothy P. Greeley
                                      TIMOTHY P. GREELEY
                                      UNITED STATES MAGISTRATE JUDGE